RAMIREZ, J.
(dissenting).
I respectfully dissent. Based on Aguilera v. Inservices, Inc., 905 So.2d 84 (Fla. 2005), I believe the complaint alleges sufficient facts to support a cause of action for an intentional infliction of emotional distress.
Otto Grace was an employee of Dynair Services when, on April 4, 1997, he was injured in a work-related accident. Dynair had a contractual relationship with Royal Indemnity Company to provide workers’ compensation benefits, disability benefits and medical benefits to workers injured on the job. Royal Indemnity had an insurance company and/or health maintenance organization structured through Royalcare (a product offered by Royal Indemnity) to provide managed health care benefits to workers injured on the job.
From the time of Grace’s injury through early February 1998, Grace received full and timely medical care. After February 1998, Royal and its adjuster, Karen Holloway, served as Grace’s managed healthcare provider. Holloway had no medical or nursing training, knowledge or experience. All of the decisions regarding Grace’s medical care and treatment after February 1998 were made by persons with no medical/nursing training, knowledge or experience.
On December 8, 1997, Dr. Francisco Vi-lasuso, an anesthesiologist specializing in pain management, evaluated Grace and diagnosed him as suffering from reflex sympathetic dystrophy (RSD) or complex regional pain syndrome of the left lower extremity. Dr. Vilasuso recommended epidural blocks, physical therapy and pharmacological treatments. Grace then received epidural blocks on seven occasions. These blocks resulted in significant improvement.
On February 5, 1998, Dr. Vilasuso considered that Grace had reached maximum medical improvement and referred him to an orthopedist for treatment of the right knee, indicating that he was sufficiently well to have the surgery, as long as he continued receiving therapy for his left leg.
On February 23, 1998, Grace had a flare up of RSD in his left leg before his anticipated right knee surgery. This time, Royal denied the treatment recommended by Dr. Vilasuso. On February 27, 1998, Dr. Vilasuso contacted Royal Indemnity Company and Holloway requesting authorization to treat the patient. At this point, Dr'. Vilasuso believed that Grace could return to gainful sedentary employment as long as the patient received timely care and rehabilitation to his left leg. On March 31, 1998, Grace -filed a request for assistance seeking treatment recommended by Dr. Vilasuso. On April 13, 1998, Holloway responded that Dr. Vilasuso was the authorized treating doctor, but issued a “notice of denial” for the treatments.
On May 4, 1998, Grace filed a “petition for benefits” seeking continued medical treatment with Dr. Vilasuso. Holloway denied the claim on May 8, 1998. On July *1076 6, 1998, Dr. Vilasuso testified as to the medical necessity of Grace’s receipt of epidural injections for his RSD.
On July 20, 1998, Grace filed another request for assistance seeking medical care and the epidural treatments recommended by Dr. Vilasuso. This was followed by another petition for benefits on August 24, 1998. Royal again refused to authorize the treatment on September 1, 1998. Based on Royal Indemnity Company’s and Holloway’s conduct, Grace was not evaluated or treated from late February 1998 until early November 1998, a period of almost nine months.
On November 3, 1998, Dr. Vilasuso examined Grace and found that his condition had significantly deteriorated without treatment since his last evaluation. He prescribed a spinal cord stimulator or lumbar sympathectomy and advised the orthopedist against operating on Grace’s right knee until his RSD of the left knee was under control. On November 10,1998, Dr. Vilasuso finally performed the epidural injections which had been recommended and prescribed nine months earlier.
From November 3, 1998 until August 1999, Holloway repeatedly denied the request for spinal stimulation prescribed by Dr. Vilasuso. Holloway was told that Grace’s condition was deteriorating. Holloway had Dr. Vilasuso’s report in her possession, but kept requesting the same (already performed) evaluation from Dr. Vilasuso.
On August 4, 1999, Dr. Vilasuso re-examined Grace. By this time, Grace’s left leg was swollen and was three times as large as his right leg. He was finally able to implant the spinal cord stimulator on August 12, 1999. Grace is now incapable of returning to work in any capacity and is permanently wheelchair-bound as a direct result of Royal Indemnity Company’s and Holloway’s refusal to provide continued timely treatment as recommended by Grace’s doctor.
An order dismissing a complaint for failure to state a claim is reviewable de novo. Knox v. Adventist Health System/Sunbelt, Inc., 817 So.2d 961, 962 (Fla. 5th DCA 2002). I believe the order of dismissal here should be reversed on the controlling authority of the Florida Supreme Court’s decision in Aguilera v. Inservices, Inc., 905 So.2d 84 (Fla.2005).
In Aguilera, the Florida Supreme Court reversed a decision of this Court that ordered the trial court to dismiss Aguilera’s complaint with prejudice on the basis of worker’s compensation immunity. Id. at 98. It held that the insurance adjuster’s affirmative conduct inflicted damage on the claimant sufficient to state a cause of action for intentional infliction of emotional distress. Id. The conduct of the insurance adjuster in Aguilera included blocking the receipt of prescription medication, unilaterally canceling medical testing ordered by the worker’s compensation carrier’s own physician, and precluding the plaintiff from having emergency surgery for more than ten months during which time the plaintiff had been urinating feces and blood. Id. at 87-88. The issue, as recently stated in Ingraham v. Travelers Indem. Co., 925 So.2d 377, 378-79 (Fla. 3d DCA 2006), is whether the state’s worker’s compensation legislation immunizes an insurance carrier for “mere negligent conduct, simple bad faith and minor delays in payment,” or whether, during the course of the claims handling process, the “insurer commits an independent, intentional tort that is sufficiently separate, ‘subsequent to and distinct from the original workplace injury’.” I believe the allegations made by Grace constitute the exceptional circumstances where a separate cause of action may he.
*1077 In Aguilera, the Florida Supreme Court held that:
The allegations here simply go far beyond simple claim delay or a simple termination of benefits. The complaint specifically alleges harm caused subsequent to and distinct from the original workplace injury.
Id. at 91-92. Here, the allegations in Grace’s complaint go far beyond simple claim delay or termination of benefits. The complaint specifically alleges harm caused subsequent to and distinct from the original workplace injury. The carrier here used extraordinary measures to interfere with the medical care Grace was receiving, which was successfully treating his RSD, a serious and progressive medical condition. The lack of timely treatment caused the disease to advance, with additional injury and emotional distress.
Grace was being treated for RSD with epidural blocks on his lower left leg and was showing significant improvement. This regimen was approved by the medical personnel at CRC. It was believed at this time that Grace would be able to return to “gainful sedentary employment” as long as this treatment continued. Grace progressed well and Dr. Vilasuso referred him to an orthopedic surgeon for surgery on his right knee. However, before he could have the surgery, Grace’s RSD flared up.
At this point in time, Grace’s case had been taken over by Royal and its adjuster, Karen Holloway, who had no medical training whatsoever. For no legitimate reason, Holloway interfered with Grace’s ongoing care and refused to re-authorize the epidural blocks which had proven to provide relief to Grace for his RSD. With full knowledge of the necessity for the treatment and despite repeated requests, the refusal went on for nine months. Without the epidural blocks, Grace’s condition deteriorated. During the next nine months, the adjuster repeatedly denied requests for spinal stimulation, which Dr. Vilasuso had ordered. This was not a “flare up” of his RSD, but a progression of the disease caused solely by non-treatment.
Based on the carrier’s intentional and outrageous conduct, Grace is now permanently wheel-chair bound and unable to work in any capacity. As aptly noted in Aguilera:
The workers’ compensation system was never designed or structured to be used by employers or insurance carriers as a sword to strike out and cause harm to individual employees during the claim process and then provide a shield from responsibility for an employee’s valid intentional tort claim for that contact through immunity flowing under the law.
Id. at 91.
That is precisely what happened here. Grace was intentionally injured by his insurance carrier in the process of handling his claim “by conduct substantially certain to harm” him. Id. at 96. He was “placed at the mercy of the carrier and [its] misdirected representatives at every step of the process.” Id. at 97. The complaint here alleged that the adjuster interfered with Grace’s previously approved course of treatment by repeatedly denying authorization for treatment, which had been previously approved and proven to be effective in treating Grace’s RSD. The denials went on for a collective eighteen months. Grace’s condition deteriorated to the point that he is now confined to a wheelchair.
These allegations mirror the “exceptional circumstances” found sufficient in Aguil-era. I would thus reverse the order dismissing this case based on the Florida *1078 Supreme Court’s decision in Aguilera and remand for proceedings on the merits.